UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ELLEN HART                                          PLAINTIFF

VS.                              CIVIL ACTION NO. 3:23-CV-432TSL-RPM

JACKSON HINDS LIBRARY SYSTEM;                       DEFENDANTS
FLOYD COUNCIL (OFFICIAL AND
INDIVIDUAL CAPACITY); LAURA JANE
GLASCOFF (INDIVIDUAL CAPACITY)

MEMORANDUM OPINION AND ORDER

Defendants Floyd Council and Laura Jane Glascoff, in their individual capacities, have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against them on the basis of qualified immunity.  Plaintiff Ellen Hart has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion should be denied as to Count I; granted as to Counts III and IV; and stayed as to Count II to allow plaintiff an opportunity to file a Rule 7(a) reply.

Facts and Claims

Plaintiff, a 73-year-old, white, Jewish woman, was hired by defendant Jackson Hinds Library System (Library System) as a circulation assistant in 2013, a position she held until her termination on February 6, 2023.  Plaintiff has brought this action under 42 U.S.C. §§ 1983 and 1981 against the Library System, Floyd Council, Executive Director of the Library System,

1

in his individual and official capacities, and Laura Jane Glascoff, Director of Human Resources, in her individual capacity, asserting claims pursuant to § 1983 for alleged violation of her (1) Fourteenth Amendment due process right to a pretermination hearing; (2) Fourteenth Amendment equal protection right to be free from discrimination based on race, ethnicity or religion; and (3) First and Fourteenth Amendment rights to be free from religious discrimination.  She also asserts a state law breach of contract claim against the Library System.  Plaintiff's claims are based on the following facts, as alleged in the complaint.

In July 2022, a library patron who identified himself as "Jaz Frierson" sent an e-mail to the Margaret Walker Alexander library branch complaining that plaintiff and a white co-worker were prejudiced against black patrons.  Around this time, a Facebook post by an unidentified individual (whom plaintiff believes but does not know to be the same patron who sent the e-mail) accused plaintiff of being racist and threatened to reveal her contact information and "to put plaintiff in her place."  On August 31, in reply to a subsequent e-mail received the same date, ostensibly from an "Anthony Jones,"[1] accusing plaintiff of

---

[1]     The Library System reportedly believed the e-mails were from the same person, who used pseudonyms and fake e-mail addresses.

being racist, Council wrote that he considered Jones' e-mail to be harassing, demanded that Jones discontinue the harassing behavior and advised that he had reported Jones' threatening e-mail to the Jackson Police Department.  At that point, plaintiff, having become aware of the threatening e-mails and Facebook post, requested reassignment to a different branch, and in addition, filed her own complaint with the police department.

On September 15, 2022, Council received yet another e-mail, purportedly from a "Willie J.," asking where "the two [C]aucasian employees [he] had problems with at the Alexander library ha[d] been relocated to."  After receiving this e-mail, Council e-mailed all the branches, directing employees to "[i]gnore and delete these e-mails" and "stop reacting to this person," and predicting that "the police will eventually track them by IP address" and the person would stop the behavior.

Several months later, on February 1, 2023, a black library patron, Alecess Regel, attempted to check out some books at the Eudora Welty branch, where plaintiff was assigned.  Upon examining Regel's library card, plaintiff discovered that Regel was banned from the library because of past conduct, and she also had past-due fines.  When plaintiff informed Regel that she could not check out books, Regal asked whether her children could get library cards.  Plaintiff was uncertain, so she called over a black co-worker, Lisa Young, for assistance.  Young began

3

interacting with the patron at a distance from plaintiff and, according to the complaint, the longer the two spoke, the angrier Regel became.  Eventually, Regel returned to plaintiff, pointed her finger in plaintiff's face and called her a "white mother-fucking bitch" and a racist, and threatened plaintiff and her job.  Plaintiff tried to involve library security but was unable to find them.  Young allowed Regel to check out books, in violation of library policy.  Plaintiff completed an incident report for "security related incidents," in which she identified Young as a witness.

On February 6, 2023, plaintiff received a letter from defendant Glascoff dated February 2 advising plaintiff she was being placed on administrative leave pending an investigation of the February 1 incident with Regel.  Plaintiff then received a second letter from Glascoff, dated February 6, terminating her employment, effective February 3, 2023, for "disruptive behavior, failure to follow library policy and bullying."

Plaintiff alleges upon information and belief that defendants Council and Glascoff made the decision to terminate her and to do so without prior notice to plaintiff or an opportunity to be heard.  She further charges that she was terminated on account of her race and ethnicity in violation of the Equal Protection Clause, that her § 1981 right to equal treatment in contracting was violated when she was fired on

account of her race, and that she was terminated on account of her Jewish religion, in violation of Article VI and the First Amendment.  Council and Glascoff seek dismissal of plaintiff's claims against them in their individual capacities based on qualified immunity.

Qualified Immunity and Rule 12(b)(6)

Qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011).  Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.  Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808,172 L. Ed. 2d 565 (2009).

The Fifth Circuit has held that a heightened pleading standard applies when a defendant raises the defense of qualified immunity.  See Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995).  It has also held, however, that to avoid dismissal at the pleading stage, a plaintiff is not required to fully anticipate the defense of qualified immunity defense and provide greater specificity *in the complaint.* Todd v. Hawk, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam).  Rather, the complaint must only satisfy Rule 8(a)(2), which requires a "short and plain statement" of her claim.  Id.  See also Anderson v. Valdez, 845 F.3d 580, 589 (5th Cir. 2016)

5

(quotations omitted) (when a qualified immunity defense is asserted in a motion to dismiss, the district court must do no more than determine whether the plaintiff has filed a short and plain statement of his complaint under Rule 8(a)(2)'s "short and plain" standard).  Rule 8(a)(2)'s pleading standards are well settled:

> [A] plaintiff's complaint "must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory [sic] statements, do not suffice."  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  "[C]onclus[ional] allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

Anderson, 845 F.3d at 589 (citing, among other cases, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

To satisfy this standard when a qualified immunity defense is raised at the pleading stage, the plaintiff must show (1) that the factual allegations would support a determination that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.  Shaw v. Villanueva, 918 F.3d 414, 416–17

6

(5th Cir. 2019).  See Pearson, 555 U.S. at 232, 129 S. Ct. 808 (on motion to dismiss, court must decide whether facts alleged make out a violation of a constitutional right and, if so, whether the right at issue was "clearly established" at the time of defendant's alleged misconduct).[2]

Count I:  Procedural Due Process

"To establish a Fourteenth Amendment procedural due process claim, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in deprivation of that interest.'" Sims v. City of Madisonville, 894 F.3d 632, 641 (5th Cir. 2018) (quoting Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001)); see also Edionwe v. Bailey, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty.").  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth,

---

[2]     If the court determines that plaintiff has failed to state a claim in the complaint due to inadequate factual allegations, the court may allow the plaintiff to file a Rule 7 reply, as provided in Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995).  See infra pp 14-15.

408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  The Constitution does not create such entitlements; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Paul v. Davis, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  A claim of entitlement to continued employment "may be created directly by state statute or by a written contract, or by a 'mutually explicit understanding' enforceable under state law as an implied contract." Johnson v. Sw. Mississippi Reg'l Med. Ctr., 878 F.2d 856, 858 (5th Cir. 1989) (quoting Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S. Ct. 2694, 2699-2700, 33 L. Ed. 2d 570 (1972)).

It has long been established that "a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge" has a property interest in her employment and thus "may demand the procedural protections of due process." Goss v. Lopez, 419 U.S. 565, 573, 95 S. Ct. 729, 735 (1975).  See Evans v. City of Dallas, 861 F.2d 846, 849 (5th Cir. 1988) (stating that "the law is well-settled that where state or local regulations indicate that an employee may be terminated only for cause, that employee has a property interest in his continued employment.").  Plaintiff herein alleges that under Mississippi Code Annotated § 39-3-17, and under rules

8

established by the Mississippi Library Commission, she could only be terminated "for cause" and hence had a property interest in her employment.

Section 39-3-17 provides, in pertinent part, as follows:

(2) There shall be one (1) library director for each library system.... The library system director shall administer and establish procedures according to policies established by the administrative board of trustees. His or her duties shall include: (a) employment of staff with the approval of the board of trustees; (b) prescription of staff duties;(c) removal of staff for cause; (d) preparation of the budget; (e) financial and statistical management; (f) reporting to board of trustees; and (g) other acts necessary for the orderly and efficient administration of the library system.

(3) In the event that a determination is made by the library system director to remove a staff member for cause, written notice of such decision shall be given to such staff member. A staff member who has received such notice shall be entitled to:

    (a) Written notice of the reasons for such action, together with a summary of the factual basis therefor, which notice shall be given at least five (5) days prior to any hearing;

    (b) An opportunity for a hearing before the board of trustees at which to present matters relevant to the reasons given for the decision, including any reasons alleged by the employee to be the reason for such action;

    (c) Receive a fair and impartial hearing before the board;

    (d) Be represented by legal counsel, at his own expense.

If the staff member does not request a hearing, the decision of the director shall be final.

Plaintiff additionally alleges that "[a]ccording to her

employment contract," which "incorporated explicitly and/or

implicitly the requirements of state statutes such as § 39-3-17,

Smith v. Meridian-Lauderdale Public Library, as well as the

library's own handbook and policies," she "could only be fired

for cause," and thus was entitled to due process.  In support of

this allegation, plaintiff has included with her response to

defendants' motion portions of the 1999 and 2007 versions of the

Mississippi Library Commission: Trustee Handbook[3] which, under

the heading "Due Process," references § 39-3-17, identifies the

foregoing statutory duties of the library director, and under

the heading, "Terminations," states:

> Terminations can be frequently contested.  The
> Administrative Board of Trustees must ensure that
> library system employees receive due process and the
> opportunity to contest the decision before being
> terminated.  Written personnel policies and
> documentation of an employee's work record and
> performance are the basis upon which employment

---

[3]    Defendants contend the court may not properly consider
these excerpts from the Mississippi Trustee Handbook for
multiple reasons, including that it was not referenced in the
complaint; it is not relevant as it governs trustee conduct, not
the conduct of the library director or human resources director;
and it is 24 years old.  However, while the complaint does not
directly refer to the Trustee Handbook as a basis for
plaintiff's due process claim, it does allege that "the
library's own handbooks and policies" were part of plaintiff's
employment contract.  This reference is sufficiently broad to
encompass the Trustee Handbook.  Further, while the Trustee
Handbook is obviously intended to govern trustees, it also
clearly delineates the responsibility of the library director to
ensure that an employee terminated for cause be given notice and
an opportunity to be heard.

decisions must be made.  It is the board's
responsibility to make sure that an employee is not
terminated because of personal malice, but on job
performance.

In the court's opinion, plaintiff has sufficiently alleged
that her employment was covered by a state statute, as well as
by rules and regulations of the Library System's governing body
under which she could only be terminated for cause.  See Schaper
v. City of Huntsville, 813 F.2d 709, 713–14 (5th Cir. 1987)
(city's personnel policies which provided that "[d]isciplinary
action may be taken against an employee for just cause" allowed
"for dismissal only for 'just cause,'" and thus conferred a
property interest that could not be deprived without due
process); Bueno v. City of Donna, 714 F.2d 484, 492 (5th Cir.
1983) (city's personnel policies providing that "department
heads may, for just cause, terminate the services of any
employee under their supervision" entitled employee "to
continued employment until there arose 'just cause' for his
dismissal," and thus it was "clear that the plaintiffs who were
fired possessed a constitutionally protected property interest
in their continued employment."); Smith v. Meridian-Lauderdale
Public Library, No. 3:17CV501-CWR-FKB, 2019 WL 454597 (S.D.
Miss. Feb. 5, 2019) (library system employee had a property
interest in employment because under "the plain language reading
of [§ 39-3-17], the library director had the power to fire
employees only for cause").  Accordingly, she has adequately

pled that she had a property interest in her employment, and further, that defendants deprived her of that interest without due process.  Therefore, defendants' motion to dismiss will be denied as to plaintiff's due process claim.

Count II – Equal Protection

In Count II, brought under § 1983, plaintiff alleges that defendants violated her Fourteenth Amendment right to equal protection by terminating her because of her race, ethnicity and/or religion.  She alleges she would not have been terminated "had she been Black and/or not Jewish."  Defendants contend that this allegation is conclusory, and that plaintiff has otherwise failed to allege specific facts demonstrating an equal protection violation.  Plaintiff acknowledges in her response that "a few particulars [of the complaint's factual allegations] are not as detailed as they could be," but she maintains that the complaint states a "plausible claim that race ... played a role in the termination," as it "outlines the chain of events leading to termination, and plausibly alleges that the patrons and coworker sought to secure [plaintiff's] termination for racist reasons, and succeeded."  According to plaintiff, her termination "happened in the context of a broader, explicitly racist campaign to falsely accuse [her] of misconduct which stretched back to the prior year," and occurred because "a

12

patron - at the urging of a library employee – called [her] a 'white mother-fucking bitch'," and "yet the library fired [her] because of it, and for false reasons."

In the court's opinion, the factual allegations of the complaint do not support a reasonable inference that plaintiff was terminated because of her race, and certainly not because of her ethnicity.[4]  Plaintiff's assertion in her response that there was a "racist campaign," dating back to the prior year, "to falsely accuse her of misconduct" obviously refers to the e-mails and Facebook post by a patron or patrons some four to five months prior to her termination.  However, there is no allegation, or even insinuation or intimation that defendants (or plaintiff's co-workers) were somehow complicit in or had any role in sending the e-mails or posting accusations of racism or threats to harm plaintiff.  Furthermore, plaintiff's allegations demonstrate that Council took objectively appropriate and reasonable action in response to the e-mails by turning the matter over to the police for investigation.  Notably, there is no allegation that there were any further accusatory or threatening posts or e-mails after the police became involved.

---

[4]   There is no factual allegation in the complaint that is even remotely suggestive of discrimination based on plaintiff's Jewish ethnicity.

13

Moreover, plaintiff's allegation that Regel, the library patron involved in the February 1 incident, became angrier as she spoke with plaintiff's co-worker, Lisa Young, clearly does not support a reasonable inference that Young incited Regel against plaintiff, i.e., that she "urged" Regel to threaten plaintiff or call her a racist.  There is simply no support in the complaint for such finding.

While the complaint, as pled, does not include sufficient facts to state a plausible claim for racial (or ethnic) discrimination, plaintiff has requested that she be given the opportunity to file a Rule 7(a) reply pursuant to Schultea, 47 F.3d 1427.  The Fifth Circuit has instructed that if a district court, after applying Rule 8(a)(2)'s general pleading standard, determines that the complaint fails to adequately overcome a defendant's qualified immunity defense, "the court may [then], in its discretion, insist that a plaintiff file a reply tailored to [the defendant's] ... [motion to dismiss] pleading the defense of qualified immunity."  Anderson, 845 F.3d at 590.  See Ahmed v. City of Natchez, MS, No. 5:21-CV-58-DCB-RHWR, 2024 WL 268426, at *3 (S.D. Miss. Jan. 24, 2024) (stating "[i]n qualified immunity cases where the district court finds a complaint insufficient under Rule 8(a)(2), the review process on a motion to dismiss does not necessarily end"; instead, court "may order the plaintiff to file a reply to the qualified

14

immunity defense under Federal Rule of Civil Procedure
7(a)(7).").

Plaintiff will be afforded an opportunity to file a
Schultea reply.  The reply must be tailored to the defense of
qualified immunity, and plaintiff must support her claim "with
sufficient precision and factual specificity to raise a genuine
issue as to the illegality of [each] defendant's conduct at the
time of the alleged acts."  Reyes v. Sazan, 168 F.3d 158, 161
(5th Cir. 1999).  The reply should not contain factual
allegations pled collectively.

### Remaining Counts III and IV

Count III of the complaint asserts a § 1983 claim against
all defendants for discrimination based on race and ethnicity in
violation of § 1981.  Defendants Council and Glascoff seek
dismissal of this claim, contending that only employers are
liable under § 1981, and they were not plaintiff's employer.
See Oden v. Oktibbeha Cnty, Miss., 246 F.3d 458, 464 (5th Cir.
2001) (proper defendant in a § 1981 claim is the government
employer in his official capacity).  Plaintiff has not responded
to defendants' argument on this point.  She also has not
responded to their argument that they are entitled to dismissal
of Count IV, a § 1983 claim for religious discrimination in
violation of Article VI and the First and Fourteenth Amendments

of the U.S. Constitution, because the complaint lacks the requisite specificity to overcome their qualified immunity. Given plaintiff's failure to respond to the motion to dismiss as to these claims, the court deems them abandoned and they will therefore be dismissed.  See <u>Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.</u>, 22 F.4th 450, 459 (5th Cir. 2022) (stating that "'[a] plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.'").

<u>Conclusion</u>

Based on the foregoing, it is ordered that the motion of defendants Council and Glascoff to dismiss Count I is denied; the motion to dismiss Counts III and IV is granted; and the court's consideration of the motion as to Count II is stayed so that plaintiff may file a Rule 7 reply.  Such reply shall be filed on or before May 8, 2024, and any response by defendant to said reply shall be due on or before May 15, 2024.  Should plaintiff fail to timely file a Rule 7 reply, defendants' motion as to Count II will be granted without further notice.

SO ORDERED this 25th day of April, 2024.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

16